In the Matter of the Application of FRANK N. McCOY, JR., Respondent, for an Order of Mandamus against JAMES K. APGAR et al., Individually and Constituting the Board of Trustees of the Village of Peekskill et al., Appellants.

**Streets — villages — constitutional law — municipal corporation may not in absence of legislative authority permit encroachment upon public street — board of trustees of village of Peekskill authorized to grant permission to abutting owner to erect gasoline pump at curb line of street — power of Legislature to authorize encroachments upon public streets qualified and limited — obstruction challenged only on the ground it interferes with public rights — when sanction therefor comes within legislative power of control and regulation of rights of the public.**

1. Streets and highways are established for the benefit of the public, and a municipal corporation or local governing body may not, at least

in the absence of legislative authority, permit an incumbrance thereon which but for such permission would constitute a nuisance. Such legislative authority should be express or clearly implied.

2. By the charter of the village of Peekskill the board of trustees of the village is authorized under specified circumstances " to also issue permits for placing tanks and containers for storage of gasoline, kerosene or other oils, within the bounds of a public highway and beneath the surface thereof and to permit arrangements for drawing therefrom upon the curb line of such street," and it cannot be said that if the Legislature had power to grant the village officers the authority conferred by the statute, the permission to construct a fixed pump upon the sidewalk near the curb line, as a reasonable " arrangement " for drawing gasoline from underground tanks, exceeded the authority given. (*Matter of Kahabka* v. *Schwab*, 205 App. Div. 368, 371; affd., 236 N. Y. 595, distinguished.)

3. The powers of the Legislature to authorize encroachments upon public streets are qualified and limited not only by express prohibitions contained in the Constitution directly referring to the streets and highways but also by the general constitutional limitations that the Legislature may not deprive the individual of his property without compensation nor may it authorize the private appropriation of property held in trust for the public, in a manner which would unreasonably interfere with its use by the public.

4. Where, however, obstructions or encroachments, sanctioned by the Legislature, are challenged only on the ground that they interfere with public rights, the courts may consider whether the sanction of the Legislature comes within its power of control and regulation of the rights of the public, which, within constitutional limitations, may be created, governed, increased or diminished by the Legislature, and where it has seen fit to leave to the village authorities the determination of whether the advantage of permitting, subject to revocation of the permission, the erection near the curb line of a village street of pumps which serve a public convenience in connection with the use of the street and benefit abutting property owners in the use of their property, does not outweigh the disadvantages of the consequent slight encroachment, it cannot be said that the Legislature acting as the representative of the public in the control of the use of the street and in the determination of the public rights therein has exceeded its constitutional powers and diverted to private purpose property which is held subject to a public trust.

*Matter of McCoy* v. *Jordan*, 212 App. Div. 534, reversed.

(Argued June 3, 1925; decided July 15, 1925.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered March 27, 1925, which affirmed an order of Special Term granting a motion for a peremptory order of mandamus to compel the defendants to remove all curb gasoline pumps from the streets of the village of Peekskill.

*Robert F. Barrett, Corporation Counsel (Daniel J. Kenefick of counsel), for appellants.* The Legislature expressly delegated power to the municipal authorities of the village of Peekskill to permit the erection and maintenance of the gasoline pumps in the public streets. (L. 1917, ch. 198, § 3, subd. 7.) The legislative power over public streets is absolute and unrestricted except as qualified by constitutional limitations and in the exercise of this power the Legislature may authorize structures in the streets which without such authority would be encroachments and obstructions, and this power it may delegate to a municipal corporation. (*Bradley* v. *Degnon Const. Co.,* 224 N. Y. 60; *Wormser* v. *Brown,* 149 N. Y. 165; *Hoey* v. *Gilroy,* 129 N. Y. 132; *Jorgensen* v. *Squiers,* 144 N. Y. 280; *Sauter* v. *U. C. Nat. Bank,* 45 Misc. Rep. 368; 119 App. Div. 898; 193 N. Y. 661; *Reis* v. *City of New York,* 113 App. Div. 464; 188 N. Y. 464; *People ex rel. Winthrop* v. *Delany,* 120 App. Div. 801; 192 N. Y. 533; *Matter of Woolsey,* 95 N. Y. 135; *Stanley* v. *J. S. C. R. R. Co.,* 182 App. Div. 399; 227 N. Y. 639; *Cohen* v. *Mayor,* 113 N. Y. 532.) The act of 1917 was in substance and effect a legislative declaration that the proprietary right of the abutting owners, as owners of the fee of the street, to erect and maintain gasoline tanks and pumps therein was not an interference with the public easement. (*Jackson* v. *Hathaway,* 15 Johns. 447; *Robert* v. *Saddler,* 104 N. Y. 230; *Deverell* v. *Bauer,* 41 App. Div. 53; *Etz* v. *Daily,* 20 Barb. 32; *Platt* v. *Vil. of Oneonta,* 88 App. Div. 192; *People ex rel. Retsof Mining Co.* v. *Priest,* 75 App. Div. 131; 175 N. Y. 51; *People ex rel. Abraham* v. *Perley,* 67

Misc. Rep. 471; 143 App. Div. 915; 202 N. Y. 620; *Mott v. Eno*, 181 N. Y. 346; *Bradley v. Crane*, 201 N. Y. 14.)

*Myle J. Holley* for respondent. Gasoline pumps placed upon the sidewalks of the public streets and near the curb lines thereof are nuisances as a matter of law. (*Kahabka v. Schwab*, 205 App. Div. 368; *Hoffler v. Buck*, 230 N. Y. 608; *Cohen v. Mayor*, 113 N. Y. 533; *Warden v. City*, 123 App. Div. 733; 193 N. Y. 699; *Lyman v. Vil. of Potsdam*, 228 N. Y. 398; *H. E. Protective Co. v. Williams*, 228 N. Y. 407.) Chapter 198 of the Laws of 1917 does not confer any authority upon the board of trustees to grant permits to place gasoline tanks upon the public streets which will interfere with the public use thereof. (*City of Mt. Vernon v. N. Y., N. H. & H. R. R. Co.*, 232 N. Y. 309; *Bradley v. Degnon Const. Co.*, 224 N. Y. 60; *Town of Mt. Pleasant v. City of New York*, 199 App. Div. 315; *Acme v. Schinasi*, 215 N. Y. 495; *City of New York v. Rice*, 198 N. Y. 124; *Hatfield v. Strauss*, 189 N. Y. 208; *Ackerman v. True*, 175 N. Y. 353; *People ex rel. Pumpyansky v. Keating*, 168 N. Y. 390; *People ex rel. Hoffler v. City of Buffalo*, 193 App. Div. 262; 230 N. Y. 608; *People ex rel. Kahabka v. Schwab*, 205 App. Div. 363; 236 N. Y. 594.) Gasoline pumps similar to those complained of are not a public use. (*Matter of Mayor, etc., of N. Y.*, 135 N. Y. 259; Dillon on Mun. Corp. § 1117; Elliott on Highways, § 829; McQuillan on Mun. Corp. § 1355; *People ex rel. Hoffler v. City of Buffalo*, 193 App. Div. 262; 230 N. Y. 608.)

LEHMAN, J. Pursuant to an ordinance passed by the village of Peekskill, the village authorities have permitted. the erection of several gasoline pumps upon the sidewalks of public streets or highways, at or near the curb line. A peremptory mandamus order has been issued to compel the removal of these pumps on the ground that they

constitute unlawful encroachments or obstructions in the highways.

Licenses have been issued by the village authorities for the erection of these pumps. The village ordinance passed on April 27th, 1920, provides for such licenses. Similar pumps erected upon the sidewalks close to the curbstones of streets in Buffalo have been held to constitute an unlawful encroachment upon the city streets though authorized under the terms of a municipal ordinance. (*Matter of Kahabka* v. *Schwab*, 205 App. Div. 368, 371; affd., without opinion, 236 N. Y. 595.) The question presented in that case was whether the municipal authorities of the city of Buffalo had power to authorize the erection of such incumbrances or obstructions and the opinion of the Appellate Division points out that " neither in the provisions of the charter nor any other statute to which our attention has been called have we found authority to authorize the city to divert the public streets to such private use." We did not pass upon the question of whether the Legislature had the power to grant such authority if it saw fit. We decided that the Legislature did not attempt to grant the authority. The charter of the village of Peekskill does authorize the board of trustees of the village under specified circumstances " to also issue permits for placing tanks and containers for storage of gasoline, kerosene or other oils, within the bounds of a public highway and beneath the surface thereof and to permit arrangements for drawing therefrom upon the curb line of such street," and the legality of the incumbrance of which the relator complains depends upon the construction and effect of this provision of the village charter.

Streets and highways are established for the benefit of the public and it is too well established to require any citation of authority that a municipal corporation or local governing body may not, at least in the absence of legislative authority, permit an incumbrance thereon which

but for such permission would constitute a nuisance. Such legislative authority should be express or clearly implied. It is claimed that the authority to " permit arrangements " upon the curb line of a highway for drawing gasoline from a tank within the bounds of the highway should not be construed as authorizing permission for the erection of a pump. We think that the Legislature clearly intended to confer authority to give such permission. While perhaps it would be practical to draw gasoline from tanks in some other manner, which, it may be argued, would interfere less with the enjoyment of the entire street by the public, yet the Legislature has chosen to leave the choice of " arrangements " for such purpose to the discretion of the village authorities. In expressly conferring upon the village officers the authority to grant such permission, the Legislature must have contemplated that some " arrangement " might be permitted which without such permission would not be lawful. The use of such pumps for this purpose was not unusual and we cannot say that if the Legislature had power to grant the village officers the authority conferred by the statute, the permission to construct a fixed pump as a reasonable " arrangement " for drawing gasoline from underground tanks exceeded the authority given. The highways affected by the statute are in a village and not in a great city. The authority conferred is coupled with the right to prohibit such constructions at any point or place where the village board " may deem the location thereof as unnecessary and to cause the removal thereof at the expense of the adjoining property owner, when said board shall deem it necessary and proper." These circumstances may enter into our consideration of the proper construction of the authority which the Legislature attempted to grant and of the power of the Legislature to confer such authority.

We have in many cases pointed out that a local governing body even though it owns the fee of the streets

or highways may permit occupation of a part thereof
only by express authority derived from the Legislature.
" The title to the streets and highways, whether in the
people or a municipality, or in fee or in easement, is held
for the public use. The fee of the streets acquired by
the city of New York is held by it in trust for the use of
all the people of the State and not as corporate or
municipal property. The power of the Legislature in
respect to them is qualified by the Constitution alone.
* * * The Legislature may, unless forbidden by the
Constitution, delegate to a municipality, or an agent for
such purpose, the power to authorize it, (an encroach-
ment) but the delegation must be in clear and unmis-
takable language." (*People ex rel. City of New York* v.
*N. Y. Rys. Co.*, 217 N. Y. 310, 315.) Of course the powers
of the Legislature in this respect may be qualified and
limited not only by express prohibitions contained in the
Constitution directly referring to the streets and high-
ways but also by the general constitutional limitations
that the Legislature may not deprive the individual of
his property without compensation nor may it authorize
the private appropriation of property held in trust for
the public, in a manner which would unreasonably inter-
fere with its use by the public. In the case of *Bradley*
v. *Degnon Contracting Co.* (224 N. Y. 60) we recognized
both the extent and the limitations of the legislative
control of streets and highways. " The Legislature, as
the representative of the State, has control and authority
over them, absolute and unrestricted, except as qualified
by the Constitution, and the rule that the free use of
them for the purposes and in the modes inherent in their
creation will not be unreasonably interfered with through
or for any private appropriation or use. It can authorize
structures in them for private use and benefit which are
reasonably incident to the ordinary uses of a street and
which without such authority would be encroachments
and public nuisances." (p. 67.)

In the present case the authority to permit the erection of a pump upon the sidewalk of the highway will, if sustained, give sanction to the private appropriation and use of a part of the highway by the abutting owner. There are many cases where the courts have sustained the power of the Legislature to authorize private appropriation of part of the highway through an encroachment on the sidewalk by an abutting owner; in other cases the courts have held that the attempted grant by the Legislature exceeded its powers. In all these cases alike the determining principle of the decision was that the private appropriation was unlawful where it infringed upon another's private right of property or easement in the highway or where it unreasonably interfered with the free use of highways by the public " for the purposes and in the modes inherent in their creation."

In the present case the permission to maintain tanks under the sidewalk and pumps at the curb has been conferred upon abutting owners. The relator does not claim any private ownership in the fee of the street or any private easement of any kind therein. No injunction is asked for the protection of his property rights. He claims no special injury. He speaks for the public, demanding protection of public rights against the acts of public officers, themselves under a duty to protect such rights. The power to take private property even for public use without compensation has been by the Constitution expressly withheld from the Legislature; control of and power to regulate a public right or use has been conferred by the Constitution upon the Legislature and the Legislature alone. When an encroachment or obstruction, sanctioned by the Legislature, is challenged on the ground that it injures the property rights of an abutting owner, the courts may consider whether the sanction of the Legislature falls within the constitutional prohibition. The nature of private property rights is determined by the courts and when determined they may ordinarily not

be taken in whole or in part by the Legislature even in the interests of the public without compensation. (*Muhlker v. N. Y. & Harlem R. R. Co.*, 197 U. S. 544.) When similar obstructions or encroachments are challenged on the ground that they interfere with public rights the courts may consider whether the sanction of the Legislature comes within its power of control and regulation of the rights of the public. Within constitutional limitations rights of the public may be created, governed, increased or diminished by the Legislature. In one instance the courts deal with rights outside of unlimited legislative control; in the other instance the courts deal with rights within the plenary control of the Legislature when the Legislature acts as representative of the public and in the interests of the public. In neither instance may the courts consider the wisdom of the legislation, though they must determine whether the legislation may reasonably tend to promote the public comfort or convenience in the use of the streets without unreasonable interference with the primary purpose for which they were created.

A large part of the traffic on highways to-day is by means of gasoline-driven automobiles. When the gasoline in the automobile is exhausted, the automobile cannot proceed until the supply is renewed. Convenience in obtaining a fresh supply benefits a large part of the traveling public; in fact, unless some means of obtaining such supply is available the use of the highways by automobiles must cease. It is argued that the use of a part of the sidewalk for the erection of a gasoline pump to supply vehicles in the roadway results in the obstruction of traffic not only through the physical encroachment of the pump structure upon the street but through the consequent invitation to automobiles to use the pump and to form lines in the roadway while awaiting their turn to avail themselves of its use. That argument itself emphasizes that the use of the street which the Legislature

[241 N. Y. 71]       Opinion, per Lehman, J.       [July,

has attempted to sanction conduces to the convenience of large numbers of travelers. In a village street the gasoline cannot be supplied to automobiles unless arrangements can be made for bringing the gasoline to the automobiles in the roadway or the automobiles pass over the sidewalk to private property where the gasoline is stored. Any method adopted may involve to a greater or lesser degree obstruction of the traffic in the highway and upon its sidewalks. The Legislature has seen fit to leave to the village authorities the determination of whether the advantage of permitting, subject to revocation of the permission, the erection, near the curb line, of pumps which serve a public convenience in connection with the use of the street and benefit abutting owners in the use of their property, does not outweigh the disadvantages of the consequent slight encroachment. The village authorities have so determined. The inducement which led to the granting of the permission may have been solely to benefit the abutting owner but all the public have access to the pump and its use may add to the convenience of travel. We cannot say under these circumstances that the legislative control of the use of the street for street purposes does not include a right to authorize the use of a small portion of the street for the purpose under consideration. (*Bradley* v. *Degnon Contracting Co., supra.*) We are dealing here with an erection upon a village street and not the street of a great city; the obstruction to traffic is relatively small; the user is one which is directly connected with a lawful means of locomotion on the street. What may be a reasonable use of the street, serving the public convenience, may under somewhat different circumstances become patently unreasonable. We do not decide that the Legislature could grant similar authorization where the obstruction of traffic would be serious, nor use part of a street permanently or temporarily for the vending of other kinds of commodities not directly tending to make the movement of traffic more conven-

ient.    We decide only that the relator fails to show that the Legislature acting as the representative of the public in the control of the use of the street and in the regulation of the public rights therein has exceeded its constitutional powers and diverted to private purpose property which is held subject to a public trust.

The orders should be reversed, with costs in all courts, and application denied, with costs.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN and ANDREWS, JJ., concur; CRANE, J., dissents.

Orders reversed, etc.